**Laura A. Fine**, OSB No. 882057
Email: AttorneyLauraFine@gmail.com
PO Box 1240
Veneta, OR 97487
Telephone: (541) 341-4542
Facsimile: (541) 341-4543
Cell Phone: (541) 729-2957
**Attorney for Plaintiff**

UNITED STATES DISTRCIT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JEREMY RYAN LEHMAN**, | Case No. _____ |
| Plaintiff, | **COMPLAINT** <br> **Civil Rights Violation** |
| vs. | **Ex Post Facto; Cruel and Unusual Punishment** |
| **MERILEE NOWAK, S HOFMAN, MICHAEL HSU, KIM COONS,** | **(42 U.S.C. § 1983)** |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Jeremy Ryan Lehman, by and through his attorney, hereby alleges:

## INTRODUCTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983. This case involves Plaintiff's two-year over detention in prison caused by Defendants' unconstitutional actions. Plaintiff was convicted and sentence in the adult court for conduct that occurred when he was 17 years old. At the time of Plaintiff's crime in 1994, the Oregon Department of Corrections ("DOC") was required to apply earned time credit to Plaintiff's term of incarceration for

Page 1 - COMPLAINT (42 U.S.C. § 1983)

appropriate institutional behavior under Or. Rev. Stat. § 421.121. Those credits have the effect of shortening a prisoner's incarceration term by as much as 20 percent its total term. The application of earned time credits to an incarceration term is a simple administrative task involving basic subtraction. Yet, DOC has repeatedly refused, by retrospectively applied policies and rules, to apply earned time credits to the term of incarceration for youth, like Plaintiff. DOC has taken these actions even after the Oregon Supreme Court twice held that DOC had a mandatory duty to apply earned time credits and its rules could not stand in the way of a prisoner's release from prison. Under the current policy and rule, retroactively applied to Plaintiff, DOC restricted its authority to apply earned time credits based upon the Oregon Board of Parole and Post-Prison Supervision ("Board") providing an administrative adjustment to a prisoner's release date reflecting the DOC calculation of earned time credit. Under that policy and rule, after the DOC provided the Board with its calculation of Plaintiff's earned time credits (1020 days) and adjusted earned time credit release date, the Board, with no legal authority to do so, refused to make a full administrative adjustment to Plaintiff's board-imposed release date, which Plaintiff had already completed. To enforce his right to earned time credit and the correct calculation of his sentence, Plaintiff sought and obtained a favorable decision in the Oregon Court of Appeals that required the Board to administratively adjust his release date, resulting in Plaintiff's immediate release from prison. Depriving Plaintiff of his liberty rights, disregarding mandatory state law, retroactively applying laws that increase punishment, and being deliberately indifferent to the risk of over detaining Plaintiff, all constitute violations of the United States Constitution. Plaintiff seeks declaratory and injunctive relief; compensatory and punitive damages; and reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, for violating his constitutional rights.

Page 2 - COMPLAINT (42 U.S.C. § 1983)

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over Plaintiff's claims for violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331 and 1343 because the causes of action arise under 42 U.S.C. § 1983.

3. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon.

**PARTIES**

4. Plaintiff JEREMY LEHMAN is, and at all relevant times, was a resident of the state of Oregon. He was a prisoner in the custody of DOC. Plaintiff is currently a resident of Linn County.

5. Defendant S HOFMAN was employed as a Prison Term Analyst ("PTA") at the DOC's Offender Information Sentence Computation Unit ("OISC"), acting under color of state law, at all relevant times. They are responsible for calculating and applying ETC and computing release dates pursuant to applicable rules and statute and criminal judgments. All conduct described below was taken within the course and scope of their employment with DOC. They are sued in their individual capacity.

6. Defendant MERLIEE NOWAK was, at all times relevant, the OISC Policy Manger of DOC, acting under color of state law. She was responsible for supervising OISC Prison Term Analysts who calculate and apply earned time credit and establish release dates pursuant to applicable rules and statutes, and for verifying their calculations. She was a policymaker at OISC at all times relevant. She has been personally involved in the violations alleged herein as an employee of DOC. She is sued in her individual capacity.

7.  Defendant MICHAEL HSU was, at all times relevant, employed as the chairperson of the Board, acting under the color of state law. He was responsible for adopting rules and policies related to the Board's statutory authority and carrying out decisional authority under Or. Rev. Stat. Chapter 144 and Or. Admin. Rules Chapter 255. He was and is an active member of the Oregon State Bar. He has been personally involved in the violations alleged herein as an employee of the Board. He is sued in his individual capacity.

8.  Defendant KIM COONS is and was, at all times relevant, employed as a hearings specialist of the Board, acting under color of state law. Coons frequently provides opinions and makes decisions about the policy and practice of the Board to members of the public. Her decades of experience as a Board staff are relied upon by Board members. All conduct described herein was taken within the course and scope of her employment with the Board and she is sued in her individual capacity.

## GENERAL ALLEGATIONS

### *Plaintiff's Conviction and Sentence*

9.  In June of 1994, Plaintiff was 17 years old when he committed a crime that resulted in his prosecution as an adult for that crime. Plaintiff was convicted and sentenced to 360 months confinement and a life term of post-prison supervision.

10. At the time of Plaintiff's 1994 crime, he was entitled to receive earned time credit under Or. Rev. Stat. § 421.121, which would reduce his term of incarceration by as much as 20 percent for appropriate institutional behavior.

11. On September 27, 2007, Plaintiff was convicted of a separate crime while confined in prison and sentenced to 70 months incarceration and 36 months post-prison supervision that ran consecutive to the sentence he was already serving.

### *Oregon Supreme Court's Authoritative Decisions and DOC's Contrary Rulemaking*

12. In 2000, OISC denied earned time credits under Or. Rev. Stat. § 421.121 (1989) to a 15-year-old youth offender (Engweiler) convicted of aggravated murder on the grounds that he was serving a life sentence and that the Board established his prison term.

13. In 2006, the Oregon Supreme Court authoritatively held in *State ex rel Engweiler v. Cook,* 340 Or. 373, 378 (2006) that the DOC had a mandatory duty under Or. Rev. Stat. § 421.121 to reduce the "term of incarceration" for each eligible inmate who, based on the inmate's compliance with DOC's rules defining appropriate institutional conduct, included those individuals convicted of aggravated murder and sentenced to life imprisonment.

14. In *State ex rel Engweiler v. Cook,* 340 Or at 379-380, the Oregon Supreme Court authoritatively interpretated the phrase "term of incarceration" in Or. Rev. Stat. § 421.121 (1989) to mean "simply the amount of time that the inmate must spend in prison before he is eligible to be paroled." The Court stated that in the case of that youth offender the "term of incarceration" would be established by the Board in setting a "parole release date."

15. Following *State ex rel Engweiler v. Cook,* the DOC promulgated administrative rules under Or. Admin. R. 291-097-0005(3)(e) prohibiting the DOC from calculating earned time credits for inmates serving life sentences.

16. In 2012, OISC again denied earned time credit to the youth in *Engweiler* pursuant to Or. Admin. R. 291-097-0005(3)(e), causing that youth to serve beyond his adjusted earned time credit release date.

17. In 2013, the Oregon Supreme Court reaffirmed its interpretation of Or. Rev. Stat. § 421.121 (1989) in *State ex rel Engweiler v. Cook* and rejected the DOC's request to overturn that decision in *Engweiler v. Persson,* 354 Or 549 (2013).

18.  The Oregon Supreme Court in *Engweiler v. Persson* stated that "DOC's rules pertaining to earned time credits cannot stand between [Engweiler] and his release on parole"

19.  Following *Engweiler v. Persson,* Defendant Nowak informed certain prisoners (but not Plaintiff) about a new DOC policy whereby "[t]he application of earned time to the prison term **does not** result in the inmate's release. Rather it simply moves the exit interview to an earlier date." (Emphasis in original). Defendant Nowak informed some prisoners that "[f]or additional information on how [*Engweiler v. Persson*] will impact your exit interview, please contact the [Board] directly."

20.  Following *Engweiler v. Persson,* the DOC promulgated new administrative rules under Or. Admin. R. 291-097-0236 (DOC 10-2016, f. & cert. eff. 9-15-16) specifying that the DOC would only "calculate" earned time credit against the board-imposed "initial prison term" for "[l]ife sentences for Murder and Aggravated Murder," but such calculations would not actually reduce that prison term because "parole release is still determined by the [Board]."

21.  At all times relevant, the Board did not have any written rules governing its application or adjustment of a prisoner's release date based on earned time credit applicable to Plaintiff.

22.  To the extent the Board is authorized to establish Plaintiff's term of incarceration, Plaintiff's term of incarceration for purposes of earned time credit under Or. Rev. Stat. § 421.121 is not established until the Board set his release date.

### DOC and Board Actions Against Plaintiff Giving Rise to This Suit

23.  On April 10, 2019, the Board, including Defendant Hsu, conducted a rehabilitation hearing under Or. Rev. Stat. § 163.105 and found, by order, that Plaintiff was "likely to be rehabilitated within a reasonable period of time" and changed the "terms of

confinement * * * to life imprisonment with the possibility of parole or work release." In its order, the board also "calculated [Plaintiff's] prison term under the matrix rules in effect at the time of his offense, and having determined that [Plaintiff] is now eligible to be considered for release on parole," scheduled an exit interview under Or. Rev. Stat. § 144.125(1) "in accordance with *Janowski/Fleming v. Board of Parole,* 349 Or 432 (2013)." In its order, the Board then set a "projected parole release date of 10/06/2019, following 290 months" and scheduled an exit interview hearing for August of 2019.

24. On August 15, 2019, the Board held an exit interview hearing under Or. Rev. Stat. § 144.125(1) for Plaintiff and found, by an order, that Plaintiff did not have an emotional disturbance "presently so severe as to constitute a danger to the health or safety of the community." In its order, the Board "affirmed the parole release date of 10/06/2019 following 290 months" and noted that Plaintiff has "a consecutive 70-month sentencing guidelines sentence[]" which DOC "will determine the final release date and notify the Board."

25. DOC calculated the start date of consecutive 70-month sentence to be October 6, 2019, and the final release date for August 6, 2025.

26. On April 7, 2021, Defendants Hsu and Coons issued an order, by file pass, informing Plaintiff that they had received a memorandum from Defendant S. Hofman providing an "estimated projected earned date" for December 20, 2016, which credited 1020 days earned time credit. In that order, Defendants stated they had "adjusted the firm release date established at the 08/15/2019 exit interview hearing from 10/06/2019 to 08/18/2019." Defendants also stated that they "cannot set a re-release date prior to the date of the exit interview hearing."  Finally, Defendants Hsu and Coons stated in the order that Plaintiff "has a consecutive 70-month sentence, the [DOC] will determine the final release date from custody."

27. S Hofman stated in their memorandum to the Board, described immediately above, that "[t]he application of earned time to the prison term does not result in an inmate's release. Rather, it simply moves the exit interview to an earlier date. The Department of Corrections cannot release the inmate without authorization from [the Board]."

28. Defendant S Hofman's statement, described immediately above, was consistent with the terms of Or. Admin. R. 291-097-0236 and Defendant Nowack's policy, described above.

29. Plaintiff filed an administrative review of the Board's April 7, 2021, order arguing that the Board and DOC must apply his earned time credit and properly reduce his prison term for aggravated murder, as calculated by the DOC, to December 20, 2016 "and immediately release [Plaintiff] from that sentence to begin serving my consecutive sentence."

30. On May 6, 2021, Defendant Hsu denied Plaintiff's administrative review request, described above, explaining that "[u]nder the reasoning in *Janowski,* the Board was entitled to interview [Plaintiff] and [Plaintiff] were not entitled to release until the exit interview occurred. Therefore, the Board properly adjusted, in BAF #5, [Plaintiff's] release date to August 15, 2019, which was the date of your exit interview."

31. Plaintiff sought judicial review of the Board's final order. On June 26, 2024, the Oregon Court of Appeals reversed and remanded the Board's final order in *Lehman v. Board of Parole and Post-Prison Supervision*, 333 Or App 417, 552 P3d 718 (2024). In that decision, the Court of Appeals rejected the Board's argument that *Janowski* precluded the Board from administratively adjusting his release date and held that no "source of law * * * constrain[s] its authority to administratively adjust [Plaintiff's] release date after the fact in accordance with ORS 421.121. In fact, [the Board] appears to have believed that it had the authority to do so when it adjusted [Plaintiff's] release date to the date of his (past) exit interview."

Page 8 - COMPLAINT (42 U.S.C. § 1983)

32. On January 10, 2025, the Court of Appeals issued the final appellate judgment in *Lehman v. Board of Parole and Post-Prison Supervision*.

33. On January 13, 2025, the Board issued a board order stating that "[c]onsistent with the holding in *Lehman v. Board of Parole* (2024), the Board is adjusting the firm parole release date to the estimated earned time date provided by the Department of Corrections Offender Information and Sentence Computation Unit on April 7, 2021.  The firm parole release date is adjusted to December 20, 2016."  In the order, the Board stated that "[t]he Board notes that [Plaintiff] has a consecutive 70-month sentence under sentencing guidelines, DOC will determine the release date and notify the Board."

34. On January 13, 2025, a Board administrative specialist entered a note in the Parole Board Management Information System ("PBMIS") stating: "Immediate Release – updated Parole Firm date of 12/20/2016 for Linn County Case No. 96102307 Count 07. With a tolling 70-month consecutive sentence in Marion County Case No. 07C41345 Count 01 to the firm Parole Release date, AIC Lehman's projected release date was updated from 06/15/2025 to the current date of 10/20/2022 making AIC Lehman an immediate release."

35. On January 13, 2025, Plaintiff was released from prison.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### (Due Process – Violation of Article I, Section 10, U.S. Const.)
### (Against All Defendants)

36. Plaintiff re-alleges all prior paragraphs and incorporates those allegations herein by this reference.

37. Plaintiff had a protected liberty interest in earned time credit under Or. Rev. Stat. § 421.121, and the substantive legal effect of those credits to reduce his incarceration term.

38. Plaintiff has a protected liberty interest in release from prison upon completing his term of incarceration.

39. Defendants had no legal authority for depriving Plaintiff of his earned time credit and a reduction to his actual term of incarceration based on the credits he earned, and therefore its actions were arbitrary.

40. Defendants Nowack and S Hofman deprived Plaintiff of his liberty by applying the policy and rule, described above, that does not actually apply earned time credit to his term of incarceration.

41. Defendants' actions, described above, deprived Plaintiff of earned time credit and prolonged his imprisonment by over two years without any process prior to the deprivation of those liberty rights.

42. Individually and collectively, Defendants' wrongful actions, described above, involved reckless and/or callous indifference to the federally protected rights of Plaintiff.

43. Defendants violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Second Claim for Relief:**
**(Ex Post Facto – Violation of 14th Amendment, U.S. Const.)**
**(Against All Defendants)**

44. Plaintiff re-alleges all prior paragraphs and incorporates those allegations herein by this reference.

45. Or. Rev. State. § 421.121 was in effect when Plaintiff committed his crime in 1994 and imposed a mandatory legal duty on DOC to apply earned time credit to this term of incarceration, as explained in *Engweiler v. Cook, supra*.

46. At the time of Plaintiff's crime and sentence, it was the policy of the DOC to calculate earned time credit from the date of intake and, from that date forward, apply earned time credit at regular six-month intervals and that if a prisoner received full compliance throughout[their entire prison term, the prisoner would serve 80% of their sentence.

47. Defendants Nowack and S Hofman's decisions, described above, to not apply earned time credit and reduce Plaintiff's term of incarceration were made based on DOC policies and rules adopted after Plaintiff's criminal offense.

48. Defendant Hsu and Coon's decisions, described above, to refuse to administratively adjust Plaintiff's release date after S Hofman informed them that Plaintiff had an "estimated projected earned date" for December 20, 2016, were not based on any existing source of law in effect at the time of Plaintiff's criminal offense.

49. Defendant Hsu's interpretation of *Janowski* was a new interpretation of that case that was not in effect at the time of Plaintiff's criminal offense nor provided under the Board's rules or statutes.

50. Defendant Hsu was not legally authorized under Oregon law to make a decision independently and without review of two other Board members.

51. Defendant Hsu and Coon's performative function of adjusting Plaintiff's release date to correctly reflect his earned time credit reduction, described above, was simply administrative.

52. Defendants' actions, described above, in retrospectively applying laws not in effect at the time of Plaintiff's crimes, had the effect of increasing Plaintiff's punishment by both denying him an earned time credit reduction to his term of incarceration and, consequently, prolonging his confinement by over two years beyond his total incarceration term.

53. Individually and collectively, Defendants' wrongful actions, described above, involved reckless and/or callous indifference to the federally protected rights of Plaintiff.

54. Defendants violated Plaintiff's rights under Article I, section 10, of the United States Constitution.

### Third Claim for Relief:
### (Cruel and Unusual Punishment – Violation of 8th and 14th Amendments, U.S. Const.)
### (Against All Defendants)

55. Plaintiff re-alleges all prior paragraphs and incorporates those allegations herein by this reference.

56. At all times relevant, Defendants were state employees whose job and statutory duties concern the administrative calculation of sentences and prison terms, including the application of earned time credits. .

57. Plaintiff had a constitutionally protected liberty right to the time credits he had earned and a right to release from confinement upon completion of his incarceration term.

58. A person in Defendants' official position, through training and experience, would reasonably understand that by denying the actual application of earned time credit reductions to an inmate's term of incarceration it would foreseeably result in prisoner over detention.

59. Defendant Hsu, as a member of the Oregon State Bar and a former criminal defense attorney, had special understanding that in making a novel interpretation of *Janowski* to deny administratively adjusting Plaintiff's already expired release date to accurately reflect what S Hofman informed him was Plaintiff's estimated earned time release date, his decision would result in Plaintiff's over detention.

60. DOC Defendants knew that their decisions to adopt and retroactively apply a policy and rule, post *Engweiler v. Persson,* which did not actually reduce an inmate's term of incarceration, would foreseeably result in inmates like Plaintiff being over detained in prison.

61. Defendant Nowack knew from her direct and personal involvement in *Engweiler* that by creating a policy to deny actual application of earned time credit to an inmate's term of incarceration, inmates like Plaintiff would be over detained.

62. Defendants knew and disregarded the serious risk that Plaintiff would be incarcerated beyond the lawful completion of his incarceration term after Defendant S Hofman specifically provided a calculation of the earned time credits Plaintiff had earned and was entitled to have applied to his term of incarceration.

63. Individually and collectively, the Defendants' wrongful actions, described above, involved reckless and/or callous indifference to the federally protected rights of Plaintiff.

64. Defendants violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

## DAMAGES

65. As a direct and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages, including:

    A. Loss of liberty,

    B. Loss of wages, and

    C. Mental and emotional injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

    A.    Grant Plaintiff compensatory and punitive damages against Defendants for an amount to be determined at trial,

    B.    Award Plaintiff reasonable costs, expenses, and attorneys' fees, and,

    C.    Grant Plaintiff such further relief as the Court deems is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 22nd day of March 2025.

                                                  */s/Laura A Fine*
                                                **Laura A. Fine**, OSB No. 882057
                                                Attorney for Plaintiff